**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA TRADEMARK HOLDINGS, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | **JURY DEMANDED** |
| SAFEMOBILE, LLC, an Illinois limited liability company, and DOREL NASUI, an individual, | ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |

**<u>COMPLAINT</u>**

Plaintiff Motorola Trademark Holdings, LLC ("**Motorola Trademark Holdings**") hereby alleges for its complaint against Defendants SafeMobile, LLC, and Dorel Nasui, as follows:

**<u>Nature of the Case</u>**

1.      This is an action involving infringement of registered trademarks under the Lanham Act of 1946, as amended, 15 U.S.C. § 1501 *et seq.*  Plaintiff Motorola Trademark Holdings owns numerous federally registered trademarks for MOTOROLA, MOTO, and other MOTO-formative marks, and it licenses those marks to other entities.  (Motorola Trademark Holdings, its predecessors in interest, and related entities are referred to collectively herein as "**Motorola**.")  Motorola uses those marks on telecommunication services, cellular phones, and related accessories and software.  The marks have become synonymous with the high-quality,

innovative communications-related goods and services Motorola provides to millions of consumers.

2.      Well after Motorola adopted, registered, and began using its various MOTO-formative marks—including the mark MOTO—Defendant SafeMobile, LLC ("**SafeMobile**") adopted and began using the marks MOTOPOD and MOTOPAD for telecommunication services and applications for use with Motorola's portable electronic devices.  On information and belief, Dorel Nasui ("**Mr. Nasui**") is the Chief Executive Officer of SafeMobile and is responsible for SafeMobile's decision to register, use, and continue to use the MOTOPOD and MOTOPAD marks, notwithstanding Motorola's objections to such use and registration.

3.      SafeMobile's use of the marks MOTOPOD and MOTOPAD for telecommunication services and applications for use with Motorola's portable electronic devices is likely to cause confusion with and dilute the distinctive quality of Motorola's MOTOROLA, MOTO, and other MOTO-formative marks, as used with cellular phones, telecommunication software, telecommunication services, and other related goods and services.

4.      Following unsuccessful efforts to resolve this matter without litigation, Motorola Trademark Holdings brings this action, seeking relief from SafeMobile's unauthorized and intentionally infringing use and registration of trademarks that are confusingly similar to marks owned by Motorola Trademark Holdings and for damages caused by SafeMobile's and Mr. Nasui's acts.

**Parties**

5.      Plaintiff Motorola Trademark Holdings is a Delaware limited liability company with its principal place of business at 222 W. Merchandise Mart Plaza, Chicago, Illinois 60654. Motorola Trademark Holdings is a holding company for various trademarks—including those

alleged herein—and is responsible for licensing those trademarks to its affiliates and other entities.

6.      On information and belief, Defendant SafeMobile is an Illinois limited liability company with its principal place of business at 3601 East Algonquin Road, Rolling Meadows, Illinois 60008.

7.      On information and belief, Dorel Nasui is the Chief Executive Officer of SafeMobile and resides at 21650 North Sylvander Drive, Deer Park, Illinois 60010.   On information and belief, Mr. Nasui has authorized and/or actively participated in the activities of SafeMobile complained of herein, and he is primarily responsible for SafeMobile's use and registration of the MOTOPOD and MOTOPAD marks.

**<u>Jurisdiction</u>**

8.      This action arises under the Lanham Act of 1946, as amended, 15 U.S.C. § 1501 *et seq.*  This Court has jurisdiction over the subject matter of Counts I–III pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338.

9.      This Court has jurisdiction over claims in this Complaint that arise under state statutory or common law pursuant to 28 U.S.C. §§ 1367(a) and 1338(b) because those claims are so related to the federal claims arising under the Lanham Act that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10.      This Court has jurisdiction over SafeMobile because it resides in this judicial district and because Motorola Trademark Holdings suffered harm within this judicial district as a result of SafeMobile's acts complained of herein.

11.     This Court has jurisdiction over Mr. Nasui because he resides in this judicial district and because Motorola Trademark Holdings suffered harm within this judicial district as a result of Mr. Nasui's acts complained of herein.

12.     The Northern District of Illinois is a proper venue for this action pursuant to 28 U.S.C. § 1391(b) because, among other things, SafeMobile and Mr. Nasui reside in this judicial district and the intellectual property alleged to be damaged by SafeMobile's and Mr. Nasui's acts is owned by Motorola Trademark Holdings in this judicial district.

<u>**Facts**</u>

***Motorola and Its Trademarks***

13.     Since 1928, Motorola has been an innovator in the communications and electronics industries.  Among other innovations, Motorola produced the first hands-free cellular phone product for a car (1983) and the world's first commercial handheld cellular phone (made available to consumers in 1984).

14.     For decades, Motorola has been well known by the general consuming public as a leader in the telecommunications industry and as a source of cellphones, smartphones, telecommunications software, and telecommunication services.  For many years, Motorola's products have been leaders in the industry.

15.     At least as early as May 1930, Motorola adopted and began using the trademark MOTOROLA.

16.     At least as early as May 2002, Motorola adopted and began using the mark MOTO, alone and with other terms to form various MOTO-based trademarks, in connection with Motorola's goods and services.  "MOTO" is short for "MOTOROLA" and is recognized as such by the general consuming public.

17.     Motorola Trademark Holdings owns all rights, title, and interest in and to a number of MOTOROLA trademarks and service marks, including the following, among others, registered with the United States Patent and Trademark Office ("**USPTO**"):  MOTOROLA and MOTOROLA & Design, U.S. Registration Nos. 0,399,935 (registered February 9, 1943), 2,190,864 (registered September 22, 1998), 3,934,668 (registered March 22, 2011), 0,814,700 (registered September 6, 1966), and 1,671,037 (registered January 7, 1992); M MOTOROLA & Design, U.S. Registration Nos. 1,680,185 (registered March 24, 1992) and 0,887,046 (registered March 3, 1970); MOTOROLA ORIGINAL & Design, U.S. Registration No. 2,349,586 (registered May 16, 2000); and MOTOROLA Q & Design, U.S. Registration No. 3,442,488 (registered June 3, 2008).  These MOTOROLA marks are registered for use in connection with, among other things, cellular telephones and related accessories, services, and software, including, but not limited to, software used for transmitting images, data, or sound over a telecommunications network, electronic data processing, and sending and receiving short messages and electronic mail.

18.     Motorola Trademark Holdings also owns all rights, title, and interest in and to the trademark MOTO for, among other things, the following goods in International Trademark Class ("**Class**") 9:

> Telephones, cellular telephones . . . computer software and programs used for transmission or reproducing or receiving of sound, images, video or data over a telecommunications network or system between terminals and for enhancing and facilitating use and access to computer networks and telephone networks; computer software for use in general purpose database management . . . computer game software for mobile handsets; computer software and programs featuring music, movies, animation, electronic books, games in the field of general entertainment; computer software for the distribution of information and interactive multimedia content containing text, images, video and sound to users in the field of communications; computer software and programs for management and operation of wireless telecommunications devices; computer software for accessing, searching, indexing and retrieving information and data

5

from global computer networks and global communication networks, and for browsing and navigating through web sites on said networks . . . .

U.S. Registration No. 3,402,839 (registered March 25, 2008).

19.     Additionally, to reflect the natural expansion of the products Motorola offers under its MOTO mark, Motorola Trademark Holdings has submitted an additional application to register the mark MOTO with an updated list of goods and services, including, among many others, mobile phones, smartphones, and various types of software in Class 9 and telecommunication services in Class 38.  (U.S. Application Serial No. 86/145,111).

20.     Motorola Trademark Holdings also owns all rights, title and interest in and to several other MOTO-based trademarks, including but not limited to MOTO X, MOTO G, and MOTOMAKER, as well as other MOTO-based trademarks that are registered with the United States Patent and Trademark Office.  For instance, Motorola Trademark Holdings owns all rights, title, and interest in and to the trademark MOTOBLUR, U.S. Registration No. 3,887,174 (registered December 7, 2010) for, among other things, computer application software for cellular or mobile phones in Class 9, and wireless telecommunication services in Class 38. Motorola Trademark Holdings also owns all rights, title, and interest in and to the trademark MOTOTRBO, U.S. Registration No. 3,490,367 (registered August 19, 2008) for, among other things, two-way radios and software for data applications. (The MOTO-based marks referenced in paragraphs 17–20, along with the other MOTO-based trademarks owned by Motorola Trademark Holdings, are collectively referred to herein as the "**MOTO Marks**.")

21.     Each of Motorola Trademark Holdings' foregoing trademark registrations is valid, subsisting, and in full force and effect.   Additionally, U.S. Registration Nos. 0,887,046; 1,671,037; 1,680,185; 2,349,586; and 3,442,488 have become incontestable within the meaning of 15 U.S.C. §§ 1065 and 1115(b).

22.     Motorola Trademark Holdings, either directly or through extensive use by its predecessors in interest and/or its licensees, also has acquired significant common law rights in the MOTO Marks for use with Motorola's goods and services.

23.     As a result of Motorola's extensive promotion of the MOTO Marks and goods and services sold in connection with those marks, as well as Motorola's extensive sales of goods and services in connection with the MOTO Marks, these marks are well known among the general consuming public.  In the past ten years alone, Motorola has spent billions of dollars in advertising, marketing, and otherwise promoting goods and services in the United States in connection with the MOTO Marks.  Since the MOTO Marks were first adopted, Motorola has sold hundreds of millions of goods in the United States in connection with those marks.

*SafeMobile, Mr. Nasui, and Their Infringing Acts*

24.     On March 9, 2012, well after Motorola Trademark Holdings had acquired rights in its MOTO Marks for use in connection with telecommunication services, cellphones, smartphones, and related accessories and software, SafeMobile filed applications with the USPTO seeking registration of the trademarks MOTOPOD and MOTOPAD for use in connection with various telecommunication services in Class 38.

25.     On January 21, 2014, the USPTO issued federal trademark registrations for MOTOPOD (U.S. Registration No. 4,471,470) and MOTOPAD (U.S. Registration No. 4,471,471) for use in connection with the following services in Class 38:

> Communication by electronic computer terminals; Communication services, namely, electronic transmission of data and documents among users of computers; Electronic mail services; Paging services; Providing access to telecommunication networks; Providing electronic telecommunication connections; Providing telecommunication connectivity services for transfer of images, messages, audio, visual, audiovisual and multimedia works; Telecommunication access services; Wireless digital messaging services.

26. Many of the services listed in SafeMobile's registrations are services that are identical or closely related to the goods and services offered by Motorola and/or its licensees under the MOTO Marks.

27. On information and belief, SafeMobile currently uses its MOTOPOD and MOTOPAD marks in connection with, among other services, telecommunication services and applications for use with portable electronic devices. Further, SafeMobile has specifically promoted use of its MOTOPOD and MOTOPAD services in connection with products offered by Motorola. For example, SafeMobile has advertised the services offered under its MOTOPOD and MOTOPAD marks with Motorola's MOTOTRBO product, as illustrated in Exhibit A.

28. In an effort to amicably resolve the dispute between the parties, Motorola Trademark Holdings and one of its licensees have been involved, both directly and through counsel, in discussions with Mr. Nasui and SafeMobile's trademark counsel regarding SafeMobile's registrations for and use of the marks MOTOPOD and MOTOPAD. Despite months of negotiation, SafeMobile and Mr. Nasui ultimately have refused to cease use of and abandon the federal trademark registrations for the MOTOPOD and MOTOPAD marks, necessitating this lawsuit.

29. SafeMobile's MOTOPOD and MOTOPAD marks are highly similar to Motorola Trademark Holdings' MOTO Marks in sight, sound, and commercial impression. In particular, Motorola Trademark Holdings' MOTO Marks and SafeMobile's MOTOPOD and MOTOPAD marks are comprised, in dominant part, of the term "MOTO." Furthermore, on information and belief, SafeMobile promotes its MOTOPOD and MOTOPAD services for use in connection with Motorola devices. This increases the likelihood that consumers will mistakenly believe that

products offered under SafeMobile's MOTOPOD and MOTOPAD marks are offered, sponsored, or approved by, or otherwise connected with, Motorola.

30.     SafeMobile has used and registered the MOTOPOD and MOTOPAD marks without Motorola's approval or consent, and with knowledge of Motorola's rights in such marks, and SafeMobile has continued to use the MOTOPOD and MOTOPAD marks, notwithstanding Motorola's objections to such use and registration.

## Count I

### Infringement of a Federally Registered Trademark
### (15 U.S.C. § 1114)

31.     Motorola Trademark Holdings adopts and incorporates by reference the preceding paragraphs as if fully restated herein.

32.     Motorola Trademark Holdings owns and has rights to use its federally registered MOTO Marks in connection with, among other things, cellular phones and related accessories, telecommunication software, telecommunication services, and other related goods and services.

33.     SafeMobile uses the marks MOTOPOD and MOTOPAD in connection with telecommunication services and applications for use with Motorola's portable electronic devices.

34.     Motorola Trademark Holdings' rights in its MOTO Marks predate SafeMobile's first use of, and applications to register, the marks MOTOPOD and MOTOPAD.

35.     The marks MOTOPOD and MOTOPAD are highly similar to the MOTO Marks in sight, sound, and commercial impression.

36.     The services on which SafeMobile uses its MOTOPOD and MOTOPAD marks are the same as, or related to, the goods and services on which Motorola uses its MOTO Marks.

37.     Mr. Nasui is responsible for directing SafeMobile's use and registration of the MOTOPOD and MOTOPAD marks.

38.     SafeMobile's use of the marks MOTOPOD and MOTOPAD is likely to cause confusion with Motorola's use of its MOTO Marks in violation of Section 32 of the Lanham Act, as amended, 15 U.S.C. § 1114.

39.     As a direct and proximate result of SafeMobile's unauthorized use of the marks MOTOPOD and MOTOPAD, Motorola Trademark Holdings has suffered and will continue to suffer substantial injury and irreparable damage to its business, reputation, and goodwill.

40.     By registering and using the MOTOPOD and MOTOPAD marks without Motorola's approval or consent, and with knowledge of Motorola's rights in such marks and Motorola's objections to such use and registration, Defendants have wilfully infringed upon the rights of Motorola, with an intent to trade upon the fame and goodwill associated with Motorola's MOTO Marks.

41.     Motorola Trademark Holdings is without any adequate remedy at law to redress SafeMobile's and Mr. Nasui's acts complained of herein and will be irreparably harmed unless SafeMobile and Mr. Nasui are enjoined from committing and continuing to commit such acts.

## Count II

### False Designation of Origin
### (15 U.S.C. § 1125(a))

42.     Motorola Trademark Holdings adopts and incorporates by reference the preceding paragraphs as if fully restated herein.

43.     Through longstanding use, Motorola Trademark Holdings, directly or through its predecessors in interest and/or its licensees, owns and has rights to use numerous MOTO Marks in connection with, among other things, cellular phones and related accessories, telecommunication software, telecommunication services, and other related goods and services.

44.     SafeMobile uses the marks MOTOPOD and MOTOPAD in connection with telecommunication services and applications for use with Motorola's portable electronic devices.

45.     Mr. Nasui is responsible for directing SafeMobile's use and registration of the MOTOPOD and MOTOPAD marks.

46.     Motorola Trademark Holdings' rights in its aforementioned MOTO Marks predate SafeMobile's first use of, and application to register, the marks MOTOPOD and MOTOPAD.

47.     SafeMobile's use of the marks MOTOPOD and MOTOPAD is likely to cause confusion with Motorola's use of its MOTO Marks in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

48.     As a direct and proximate result of SafeMobile's unauthorized use of the marks MOTOPOD and MOTOPAD, Motorola Trademark Holdings has suffered and will continue to suffer substantial injury and irreparable damage to its business, reputation, and good will.

49.     By registering and using the MOTOPOD and MOTOPAD marks without Motorola's approval or consent, and with knowledge of Motorola's rights in such marks and Motorola's objections to such use and registration, Defendants have wilfully infringed upon the rights of Motorola, with an intent to trade upon the fame and goodwill associated with Motorola's MOTO Marks.

50.     Motorola Trademark Holdings is without an adequate remedy at law to redress SafeMobile's and Mr. Nasui's acts complained of herein and will be irreparably harmed unless SafeMobile and Mr. Nasui are enjoined from committing and continuing to commit such acts.

## Count III

### Dilution by Blurring
### (15 U.S.C. § 1125(c))

51.     Motorola Trademark Holdings adopts and incorporates by reference the preceding paragraphs as if fully restated herein.

52.     Motorola Trademark Holdings owns and has rights to use its federally registered MOTO Marks in connection with cellular phones and related accessories, telecommunication software, telecommunication services, and other related goods and services.

53.     As a result of Motorola's extensive use, the general consuming public in the United States has grown to recognize Motorola Trademark Holdings' MOTO Marks as distinctive and famous, and Motorola Trademark Holdings' registered MOTO Marks acquired such fame prior to SafeMobile's first use of, or applications to register, its MOTOPOD and MOTOPAD marks.

54.     SafeMobile's use of the marks MOTOPOD and MOTOPAD is likely to impair the distinctiveness of Motorola Trademark Holdings' famous MOTO Marks, resulting in dilution by blurring in violation of Section 43(c) of the Lanham Act, as amended, 15 U.S.C. § 1125(c).

55.     Mr. Nasui is responsible for directing SafeMobile's use and registration of the MOTOPOD and MOTOPAD marks.

56.     As a direct and proximate result of SafeMobile's unauthorized use of the marks MOTOPOD and MOTOPAD, Motorola Trademark Holdings has suffered and will continue to suffer substantial injury and irreparable damage to its business, reputation, and goodwill.

57.     Motorola Trademark Holdings is without an adequate remedy at law to redress SafeMobile's and Mr. Nasui's acts complained of herein and will be irreparably harmed unless SafeMobile and Mr. Nasui are enjoined from committing and continuing to commit such acts.

12

## Count IV

### Violation of Illinois Uniform Deceptive Trade Practices Act
### (815 ILCS 510/1 *et seq.*)

58.     Motorola Trademark Holdings adopts and incorporates by reference the preceding paragraphs as if fully restated herein.

59.     SafeMobile has used and is using the MOTOPOD and MOTOPAD marks in connection with the sale, offering for sale, distribution, promotion, and advertisement of its services in commerce in such a manner as to misrepresent the source, sponsorship, approval, and certification of its services.

60.     Mr. Nasui is responsible for directing SafeMobile's use and registration of the MOTOPOD and MOTOPAD marks.

61.     As a direct and proximate result of SafeMobile's unauthorized use of the marks MOTOPOD and MOTOPAD, Motorola Trademark Holdings has suffered and will continue to suffer substantial injury and irreparable damage to its business, reputation, and goodwill.

62.     Motorola Trademark Holdings is without an adequate remedy at law to redress SafeMobile's and Mr. Nasui's acts complained of herein and will be irreparably harmed unless SafeMobile and Mr. Nasui are enjoined from committing and continuing to commit such acts.

63.     SafeMobile's and Mr. Nasui's acts complained of herein thus violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

## Count V

### Violation of Unfair Business Practices Act
### (815 ILCS 505/1 *et seq.*)

64.     Motorola Trademark Holdings adopts and incorporates by reference the preceding paragraphs as if fully restated herein.

65.     SafeMobile's and Mr. Nasui's acts complained of herein violate the Illinois Unfair Business Practices Act, 815 ILCS 505/1 *et seq*.

66.     As a result of SafeMobile's and Mr. Nasui's acts complained of herein, Motorola Trademark Holdings has been harmed.

WHEREFORE, Motorola Trademark Holdings requests that judgment be granted in its favor and against SafeMobile and Mr. Nasui and that this Court award it the following relief:

A.      A preliminary injunction and a final, permanent injunction against SafeMobile, Mr. Nasui, and all those in active concert or participation with SafeMobile and Mr. Nasui, prohibiting them from using the marks MOTOPOD and MOTOPAD in connection with any cellular phones, applications for cellular phones, telecommunication services, or related goods or services;

B.      An order that all labels, products, devices, software, packaging, wrappers, signs, prints, banners, posters, brochures, or other advertising, marketing, or promotional materials bearing the marks MOTOPOD or MOTOPAD, or any mark that is confusingly similar to the MOTO Marks, be disabled, removed, and destroyed, along with the means for making the same, and that all Internet websites, online advertising, marketing, promotions, or other online materials bearing the marks MOTOPOD or MOTOPAD be disabled, removed, and destroyed;

C.      An order that within 30 days after entry of the injunction, SafeMobile and Mr. Nasui must file with the Court and serve on Motorola Trademark Holdings' counsel a written report, sworn under oath, setting forth in detail the manner and form in which SafeMobile and Mr. Nasui have complied with the injunction;

D.      Damages in an amount to be proven at trial sufficient to compensate Motorola Trademark Holdings for all damages caused by SafeMobile and Mr. Nasui's conduct, with such damages to be trebled if appropriate within the Court's discretion;

E.      Disgorgement of all profits or other unjust enrichment obtained by SafeMobile and Mr. Nasui as a result of SafeMobile's and Mr. Nasui's conduct complained of herein, with the amount of such profits increased to the extent they are inadequate to compensate Motorola Trademark Holdings for the harm incurred as a result of SafeMobile's and Mr. Nasui's acts;

F.      All allowable costs associated with this action;

G.      Motorola Trademark Holdings' attorneys' fees if this case is found to be exceptional;

H.      Pre- and post-judgment interest;

I.      An Order Pursuant to 15 U.S.C. § 1119, that SafeMobile's Federal Trademark Registration Nos. 4,471,470 and 4,471,471 be cancelled; and

J.      Any and all additional relief that this Court deems just.

## Jury Demand

Motorola Trademark Holdings demands a trial by jury on all issues as to which trial by jury is allowed.

Dated:  April 21, 2014            Respectfully submitted,

/s/ Kristin J. Achterhof
Kristin J. Achterhof (6206476)
Jeffrey A. Wakolbinger (6297872)
Julia L. Kasper (6309387)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
Telephone:  (312) 902-5200
Fax:  (312) 902-1061
kristin.achterhof@kattenlaw.com
jeff.wakolbinger@kattenlaw.com
julia.kasper@kattenlaw.com

*Attorneys for Motorola Trademark Holdings, LLC*